BAZZI v SENTINEL INSURANCE COMPANY

Docket No. 320518. Submitted December 9, 2015, at Detroit. Decided
June 14, 2016, at 9:20 a.m. Leave to appeal granted ___ Mich ___.

Ali Bazzi brought an action in the Wayne Circuit Court against
Sentinel Insurance Company and Citizens Insurance Company,
seeking to recover personal protection insurance (PIP) benefits
under the no-fault act, MCL 500.3101 et seq., for injuries he
received while driving a vehicle owned by his mother, Hala Bazzi.
Genex Physical Therapy, Inc., Elite Chiropractic Center, PC, and
Transmedic, LLC, intervened in the action to recover payment for
the medical services they individually provided to plaintiff for his
injuries. Sentinel Insurance insured the automobile driven by
plaintiff through a commercial automobile policy issued to Mimo
Investments, LLC, whose resident agent was plaintiff's sister,
Mariam Bazzi. Sentinel Insurance filed a third-party complaint
against Hala and Mariam Bazzi, seeking to rescind the policy on
the basis that Hala and Mariam had fraudulently procured it to
obtain lower premiums for plaintiff, who had been involved in
prior accidents. The court, Lita M. Popke, J., entered a default
judgment against Hala and Mariam. Sentinel Insurance then
moved for summary disposition of plaintiff's PIP benefits claim
and the claims of the intervening medical providers on the basis
that the policy had been rescinded for fraud. The court denied
Sentinel Insurance's motion, concluding that plaintiff had a valid
claim for PIP benefits under the innocent-third-party rule, which
provides that an insurer may not rescind benefits for mandatory
coverage under an insurance policy as to an innocent third party
injured in the accident even though the insured procured the
policy through fraud in the application. Sentinel Insurance ap-
pealed by leave granted.

The Court of Appeals held:

1. An insurance policy is a contract, and common-law de-
fenses like fraud may be invoked to avoid enforcement of the
policy unless the Legislature restricted those defenses by statute.
An insurer may invoke traditional legal and equitable remedies
to avoid liability under an insurance policy on the ground of fraud
in the application for that insurance even when the fraud was

easily ascertainable and the claimant is a third party. The relevant statute controls the mandated insurance coverages when there is a valid policy. Statutorily required coverages are not relevant when the insurer is entitled because of fraud in the application to declare the policy void *ab initio*.

2. The Supreme Court's decision in *Titan Ins Co v Hyten*, 491 Mich 547 (2012), is determinative of the outcome in this case. In *Titan*, without regard to whether the insurance policy benefits were required by statute, the Court held that because the insureds procured the policy through fraud in the application, the insurer had no duty to indemnify its insureds in a claim brought by third parties injured in an automobile accident with the insureds even though the fraudulent information in the application was easily ascertainable and the claimant was an innocent third party. In reaching that result, the *Titan* Court abrogated the easily-ascertainable-fraud rule—which provided that insurance companies may not rescind a policy on the basis of fraud when the fraud was easily ascertainable—and overruled prior Court of Appeals decisions, including *State Farm Mut Auto Ins Co v Kurylowicz*, 67 Mich App 568 (1976), and its progeny.

3. *Titan* impliedly abrogated the innocent-third-party rule because there is no difference between that rule and the easily-ascertainable-fraud rule; both rules originated in *Kurylowicz*, and that case was expressly abrogated by *Titan*. It would be nonsensical to conclude that an insurer would have no liability if the fraud was easily ascertainable, but would retain liability if the fraud was not easily ascertainable. Accordingly, the rules are two different labels for the same rule. The *Titan* Court's overruling of *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355 (1989)—which discussed the innocent-third-party rule— supported the conclusion that the *Titan* Court's decision also abrogated the innocent-third-party rule. Public policy also did not require retention of the innocent-third-party rule, and it is up to the Legislature, not the courts, to create an innocent-third-party rule through legislation if the Legislature decides it is necessary.

4. The fact that *Titan* involved liability coverage under the financial responsibility act (FRA), MCL 257.501 *et seq.*, specifically proof of financial responsibility under MCL 257.518 and MCL 257.519, as opposed to the mandatory no-fault PIP benefits involved in this case, was irrelevant to the applicability of the *Titan* holding. Rather, the fact that MCL 275.520(f)(1) of the FRA specifically limits the ability of an automobile insurer to avoid liability on the ground of fraud simply supports the conclusion that in order for an insurer to preclude coverage because of the

insured's fraud, a statute must not limit the insurer's right to rescind the policy on the basis of fraud (like in MCL 257.520(f)(1)). The no-fault act does not contain language that limits an insurer's right to rescind coverage when an insured procures the policy through fraud in the application.

5. When an insurer is entitled to rescind a no-fault insurance policy because of fraud by the insured, it is not required to pay any benefits under the policy, including PIP benefits to a third party who is innocent of the fraud. In this case, the trial court erred by denying Sentinel Insurance's motion for summary disposition on the basis of its erroneous conclusion that the innocent-third-party rule survived *Titan*.

Reversed and remanded.

BOONSTRA, J., concurring, wrote separately to elaborate on the reasoning of the majority opinion and to explain that although the earlier decision in *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket Nos. 319709 and 319710) (by a panel of which he was a part), vacated 498 Mich 870 (2015), conflicted with the conclusions reached by the majority here, in this case the Court benefited from substantial additional briefing, argument, and analysis, which resulted in the conflicting opinion. The innocent-third-party rule is part of the easily-ascertainable-fraud rule that was abrogated by the Supreme Court in *Titan*; being a third party is a necessary predicate to applying the easily-ascertainable-fraud rule. Contrary to the panel's conclusion in *State Farm*, for purposes of applying *Titan's* conclusion that an insurer may rescind a policy when the insured fraudulently procures the policy, it is irrelevant that *Titan* involved optional liability insurance, while this case involved no-fault PIP benefits, because the no-fault act does not prohibit the insured from asserting common-law contract defenses, like rescission on the basis of fraud. While MCL 257.520(f)(1) of the FRA statutorily disallows the fraud defense, it does so only in relation to the required liability coverage mandated by that act. The MCL 257.520(f)(1) disallowance does not apply to statutorily mandated PIP benefits, and the no-fault act does not contain a similar disallowance.

BECKERING, J., dissenting, disagreed with the majority's analysis of *Titan* and its application of the holding in that case to deny plaintiff coverage for PIP benefits. The *Kurylowicz* opinion did not create the innocent-third-party rule, and its holding was not outcome-determinative in this case. The easily-ascertainable-fraud rule and the innocent-third-party rule are distinct rules;

before *Titan*, the easily-ascertainable-fraud rule had been applied
to prevent an insurer from avoiding optional (nonstatutory)
coverage when the insured's fraud was easily ascertainable, while
the innocent-third-party rule was consistently applied to prevent
an insurer avoiding liability for mandatory coverage, like PIP
benefits. Because *Titan* involved contractually based excess liabil-
ity coverage, not the statutorily mandated PIP benefits at issue in
this case, and because the two rules are not the same, its
holding—which threw out the easily-ascertainable-fraud rule—
should not be extended to apply to mandatory PIP benefits. The
*Titan* Court did not mention the innocent-third-party rule and did
not discuss whether fraud could be asserted as a basis to avoid
liability in the context of statutorily mandated benefits. Accord-
ingly, the Court did not impliedly abrogate the innocent-third-
party rule. Under the innocent-third-party rule, an insurer may
not void a policy *ab initio* when an innocent third party is affected
and the type of coverage is mandatory. The *Titan* Court only
overruled *Ohio Farmers*, 179 Mich App 355, to the extent it held
that an insurer may not deny coverage on the basis of fraud when
it could have easily ascertained the fraud; the limited holding
does not support the majority's rejection of the innocent-third-
party rule because *Ohio Farmers* did not mention or involve an
insurer's attempt to rescind statutorily mandated coverage. The
innocent-third-party rule and statutorily mandated benefits were
not at issue in *Titan*; the insurer in *Titan* expressly acknowledged
liability for statutory residual liability amounts. Judge BECKERING
would have concluded that *Titan* did not abrogate the innocent-
third-party rule in the context of statutorily required PIP benefits
under the no-fault act and that the language of the no-fault act
does not contain exceptions to, or limitations on, its requirement
that an insurance carrier cover certain identified PIP benefits.
Accordingly, Judge BECKERING would have affirmed the trial
court's conclusion that the innocent-third-party rule applied, but
contrary to its conclusion, she would have held that plaintiff, as
an innocent third party, was not limited in his recovery of PIP
benefits by MCL 257.520 because that limitation was not appli-
cable to this case.

1. INSURANCE — NO-FAULT — FRAUD BY APPLICANT — INNOCENT THIRD PARTY —
   RECOVERY OF PERSONAL PROTECTION INSURANCE BENEFITS.

   An insurance company may declare a no-fault policy void *ab initio*
   and rescind it when it is able to establish that the policy was
   obtained through fraud; an insurance company may deny an
   innocent third party coverage for personal protection insurance

benefits under the no-fault act, MCL 500.3101 *et seq.*, when the
insurance company establishes that the policy was obtained
through fraud.

2. INSURANCE — FRAUD BY APPLICANT — RECOVERY OF PERSONAL PROTECTION
   INSURANCE BENEFITS — INNOCENT THIRD PARTY — DEFENSES —
   INNOCENT-THIRD-PARTY RULE AND EASILY-ASCERTAINABLE-FRAUD RULE.

The easily-ascertainable-fraud rule and the innocent-third-party
rule, which prevent an insurance company from rescinding a
policy obtained by fraud and denying coverage to innocent third
parties, are not viable defenses to an insurance company's denial
of coverage for personal protection insurance benefits under the
no-fault act, MCL 500.3101 *et seq.*; there is no distinction between
the easily-ascertainable-fraud rule and the innocent-third-party
rule.

*Gary R. Blumberg, PC* (by *Gary R. Blumberg* and
*Stefania Gismondi*), for Ali Bazzi.

*Plunkett Cooney* (by *Mary Massaron*) for Sentinel
Insurance Company.

*Anselmi & Mierzejewski, PC* (by *John D. Ruth* and
*Michael D. Phillips*), for Citizens Insurance Company.

Amici Curiae:

*Willingham & Coté, PC* (by *John A. Yeager* and
*Kimberlee A. Hillock*), for Insurance Institute of Michi-
gan.

*Donald M. Fulkerson* for Michigan Association for
Justice.

Before: SAWYER, P.J., and BECKERING and BOONSTRA,
JJ.

SAWYER, P.J. We are asked in this case to determine
whether the so-called "innocent third party" rule,
which this Court established in *State Farm Mut Auto*

*Ins Co v Kurylowicz*,[1] survived our Supreme Court's decision in *Titan Ins Co v Hyten*.[2] We conclude that it did not.

Plaintiff, Ali Bazzi (plaintiff), is seeking to recover personal protection insurance (PIP) benefits for injuries he sustained in an automobile accident while driving a vehicle owned by third-party defendant Hala Bazzi (plaintiff's mother).[3] Intervening plaintiffs, Genex Physical Therapy, Inc., Elite Chiropractic Center, PC, and Transmedic, LLC, are healthcare providers who provided services to plaintiff as a result of those injuries and are seeking payment for those services. The vehicle driven by Bazzi was insured under a commercial automobile policy issued by defendant Sentinel Insurance to Mimo Investments, LLC.[4] Sentinel maintains that the policy was fraudulently procured by Hala Bazzi and third-party defendant Mariam Bazzi (plaintiff's sister and the resident agent for Mimo Investments) in order to obtain a lower premium because of plaintiff's involvement in a prior accident. Sentinel maintains that the vehicle was actually leased to Hala Bazzi for personal and family use, not for commercial use by Mimo, and, in fact, that Mimo was essentially a shell company, which had no assets or employees or was not otherwise engaged in actual business activity. Sentinel also alleges as fraud that the third-party defendants failed to disclose plaintiff would be a regular driver of the vehicle. In fact,

---

[1] 67 Mich App 568; 242 NW2d 530 (1976).

[2] 491 Mich 547; 817 NW2d 562 (2012).

[3] Plaintiff is seeking PIP benefits under the no-fault act, MCL 500.3101 *et seq*. See MCL 500.3105 (insurer liability) and MCL 500.3107 (allowable expenses).

[4] Defendant Citizens Insurance Company's involvement and potential liability in this case is as the servicing insurer under the Michigan Assigned Claims Plan. See MCL 500.3172(1).

Sentinel pursued a third-party complaint against Hala and Mariam Bazzi, seeking to rescind the policy on the basis of fraud in the application.[5]

Sentinel thereafter moved for summary disposition of plaintiff's claim against Sentinel for PIP benefits, as well as the intervening plaintiffs' claims because the policy was rescinded on the basis of fraud. The trial court denied the motion, concluding that plaintiff had a claim because of the innocent-third-party rule.[6] Sentinel sought leave to appeal in this Court, which we denied.[7] Sentinel then sought leave to appeal in the Supreme Court, which, in lieu of granting leave, remanded the matter to this Court for consideration as on leave granted.[8] We now reverse the decision of the trial court and remand the matter for further proceedings consistent with this opinion.

The standard of review to be applied here was set forth, as follows, in *Titan*:[9]

> This Court reviews de novo a trial court's decision on a motion for summary disposition. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010). In addition, the proper interpretation of a statute is a question of law that this Court reviews de novo. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). The proper interpretation of a contract is also a question of law that this Court reviews de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

---

[5] The trial court entered a default judgment against the third-party defendants in favor of Sentinel.

[6] At this point we assume, without deciding, that plaintiff is, in fact, innocent of the fraud.

[7] *Bazzi v Sentinel Ins Co*, unpublished order of the Court of Appeals, entered May 21, 2014 (Docket No. 320518).

[8] *Bazzi v Sentinel Ins Co*, 497 Mich 886 (2014).

[9] 491 Mich at 553.

Resolution of this case begins and ultimately ends with our Supreme Court's decision in *Titan*. Although *Titan* did not involve a no-fault insurance claim for PIP benefits, we nonetheless are convinced that *Titan* compels the conclusion that the innocent-third-party rule does not apply to a claim for those benefits. That is, if an insurer is entitled to rescind a no-fault insurance policy because of fraud, it is not obligated to pay any benefits under that policy, including PIP benefits to a third party innocent of the fraud.

In *Titan*, the insurer sought a declaratory judgment on the basis that, because of fraud in the application, it had no duty to indemnify its insureds in a claim brought by third parties injured in an automobile accident with Titan's insureds.[10] The injured parties and their insurer maintained that Titan could not avoid liability to the innocent third parties because the fraud was easily ascertainable. While this Court agreed because of our earlier decision in *Kurylowicz*, the Supreme Court disagreed and overruled *Kurylowicz* and its progeny.[11]

Plaintiff and defendant Citizens argue that the decision in *Titan* does not apply to this case for two reasons: *Titan* did not involve mandatory PIP benefits, and it only considered the "easily ascertainable fraud" rule and not the "innocent third party" rule. These are the essential arguments in this case because if *Titan* does not apply here, then there is binding precedent of this Court in which we applied the innocent-third-

---

[10] *Titan*, 491 Mich at 551-552. Titan acknowledged that it was obligated to indemnify its insureds for the minimum liability coverage of $20,000 per person/$40,000 per occurrence required under the financial responsibility act, MCL 257.501 *et seq. Id.* at 552 n 2.

[11] *Id.* at 550-551.

party rule to no-fault PIP cases.[12] On the other hand, if *Titan* does apply, then we are certainly obligated to follow a recent Supreme Court decision over an older decision of this Court. But, after careful analysis, we are not persuaded that either of these arguments provides a basis for distinguishing *Titan*, and therefore we conclude that Sentinel is not obligated to pay no-fault benefits to plaintiff if Sentinel establishes that the policy was procured by fraud.

We first consider whether there is a distinction between the easily-ascertainable-fraud rule discussed in *Titan* and the innocent-third-party rule advanced in this case. We conclude that they are one and the same.

While *Titan* consistently referred to the easily-ascertainable-fraud rule set forth in *Kurylowicz*, it and the so-called innocent-third-party rule are not separate and distinct rules. As stated by the *Titan* Court:

> The principal question presented in this case is whether an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, when the fraud was easily ascertainable and the claimant is a third party.[13]

Therefore, the focus of *Titan* was not merely on the ascertainability of the fraud; it was also relevant that the case involved a third-party claimant. Indeed, the substance of *Kurylowicz* was that both conditions had to apply before the insurer was prevented from raising a fraud defense. This point was recognized by the Supreme Court in *Titan* when it observed that "when it is the insured who seeks benefits under an insurance

---

[12] See, e.g., *Lake States Ins Co v Wilson*, 231 Mich App 327; 586 NW2d 113 (1998).

[13] 491 Mich at 560.

policy procured through fraud, even an easily ascertainable fraud will not preclude an insurer from availing itself of traditional legal and equitable remedies to avoid liability."[14]

In sum, *Titan* recognized that the rule in *Kurylowicz* only applied if the fraud was easily ascertainable and involved an innocent third party. Moreover, it would make no sense to conclude that an insurer has no liability if the fraud is easily ascertainable, but would retain liability if the fraud was not easily ascertainable.[15] Accordingly, "easily ascertainable" and "innocent third party" are merely two different labels for the same rule, and we cannot dismiss the application of *Titan* merely by applying the "innocent third party" label to this case and then pointing out that *Titan* dealt with the "easily ascertainable fraud" rule. That is, in rejecting the easily-ascertainable-fraud rule, the Supreme Court of necessity also rejected the innocent-third-party rule because they are, in fact, the same rule.

Furthermore, even if the decision in *Kurylowicz* has evolved into two separate rules—the easily-ascertainable-fraud rule and the innocent-third-party rule—it is irrelevant. Both these rules have their roots in the *Kurylowicz* decision. And *Titan* clearly overruled *Kurylowicz* "and its progeny . . . ."[16] Moreover, this point is further supported by the fact that one of the cases explicitly overruled by *Titan* was this Court's decision

---

[14] *Id.* at 564.

[15] Indeed, applying such a conclusion to this case would lead to the rather bizarre result that Sentinel could deny liability if it can demonstrate that the fraud committed by the Bazzis was easily ascertainable, but not if the fraud was more difficult to establish.

[16] *Titan*, 491 Mich at 551, 573.

in *Ohio Farmers Ins Co v Mich Mut Ins Co.*[17] While *Titan* did state that *Ohio Farmers* was overruled to the extent it held "that an insurer is estopped from denying coverage on the basis of fraud when it could have easily ascertained the fraud,"[18] the discussion in *Ohio Farmers* regarding its reliance on *Kurylowicz* focused on the claimant being an innocent third party.[19] In fact, *Titan* cited *Ohio Farmers* for the proposition that "it is contended that the 'easily ascertainable' rule is required for the protection of third parties."[20] Yet, the quotation from *Ohio Farmers* cited by *Titan* referred not to the fraud being easily ascertainable, but to an insurer being estopped from rescinding a policy when an innocent third party has been injured.[21] This then brings us back to our earlier point: that the easily-ascertainable-fraud rule and the innocent-third-party rule are one and the same. An overruling of *Ohio Farmers* of necessity overrules the innocent-third-party rule.

We now turn to the other question posed in this case, whether the holding in *Titan* extends to mandatory no-fault benefits. We conclude that it does. *Titan* involved optional benefits not mandated by statute. But that was not the basis of the Court's decision. And it made the rather unremarkable observation that when insurance benefits are mandated by statute, coverage is governed by that statute.[22] It is also true that "because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an

---

[17]  179 Mich App 355; 445 NW2d 228 (1989).

[18]  *Titan*, 491 Mich at 551 n 1.

[19]  *Ohio Farmers*, 179 Mich App at 363-365.

[20]  *Titan*, 491 Mich at 568.

[21]  *Id.* at 568 n 11.

[22]  *Id.* at 554.

insurance policy, *unless those defenses are prohibited
by statute.*"[23] The Court ultimately held "that an in-
surer is not precluded from availing itself of traditional
legal and equitable remedies to avoid liability under an
insurance policy on the ground of fraud in the applica-
tion for insurance, even when the fraud was easily
ascertainable and the claimant is a third party."[24] And
it did so without qualification regarding whether those
benefits were mandated by statute. Therefore, if there
is a valid policy in force, the statute controls the
mandated coverages. But the coverages required by
law are simply irrelevant when the insurer is entitled
to declare the policy void *ab initio*. The situation would
be akin to if the automobile owner had never obtained
an insurance policy in the first place; the owner would
have been obligated by law to obtain coverage, but
failed to do so.

Thus, the question is not whether PIP benefits are
mandated by statute, but whether that statute prohib-
its the insurer from availing itself of the defense of
fraud. And the parties are unable to identify a provi-
sion in the no-fault act itself in which the Legislature
statutorily restricts the use of the defense of fraud with
respect to payment of PIP benefits. That is, the one
argument under *Titan* that would carry the day for the
appellees simply does not exist. And the Legislature
was certainly aware that it could do so as it had
already done so with respect to the financial responsi-
bility act.[25]

---

[23] *Id.* (emphasis added).

[24] *Id.* at 571.

[25] See MCL 257.520(f)(1) (providing in part that "no fraud, misrepre-
sentation, assumption of liability or other act of the insured in obtaining
or retaining such policy . . . shall constitute a defense as against such
judgment creditor").

This leads us to a related argument raised by
Citizens: that *Titan* is inapplicable because it dealt
with the financial responsibility act, which is not at
issue here. Citizens misconstrues the discussion in
*Titan* regarding MCL 257.520. While MCL 257.520
was somewhat central to the Court's analysis in *Titan*,
the Court carefully analyzed that statute to dismiss
prior decisions that had concluded it applied to all
liability insurance policies; the Court concluded that
the MCL 257.520(f)(1) limitation on the fraud defense
does not apply to all automobile insurance policies.
*Titan*[26] analyzed this point as follows:

> Several appellate decisions of this state have suggested
> that MCL 257.520 applies to *all* liability insurance poli-
> cies. For example, in *State Farm Mut Auto Ins Co v Sivey*,
> 404 Mich 51, 57; 272 NW2d 555 (1978), this Court indi-
> cated that MCL 257.520(b)(2) applies to *"all* policies of
> liability insurance[.]" (Emphasis added.) In addition, in
> *Farmers Ins Exch v Anderson*, 206 Mich App 214, 220; 520
> NW2d 686 (1994), the Court of Appeals indicated that
> "when an accident occurs in this state, the scope of
> liability coverage is determined by the financial responsi-
> bility act." See also *League Gen Ins Co v Budget Rent-A-
> Car of Detroit*, 172 Mich App 802, 805; 432 NW2d 751
> (1988) ("When an accident occurs in this state, the scope of
> the liability coverage required in an insurance policy is
> determined by Michigan's financial responsibility act[.]").
> However, none of these decisions undertook a close analy-
> sis of this issue.
>
> We have closely reviewed MCL 257.520(f)(1), and we
> believe that the statute does not *in every case* limit the
> ability of an automobile insurer to avoid liability on the
> ground of fraud; its reference to "motor vehicle liability
> policy" is not all encompassing. Rather, as used in MCL
> 257.520(f)(1), "motor vehicle liability policy" refers only to
> an "owner's or an operator's policy of liability insurance,

---

[26]  491 Mich at 558-560.

certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility . . . ." MCL 257.520(a). Thus, *absent* this certification, MCL 257.520(f)(1) has no relevant application. Further, MCL 257.520(f)(1) refers only to "the insurance *required by this chapter*," (emphasis added), and the only insurance required by chapter V of the Michigan Vehicle Code is insurance "certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility . . . ." MCL 257.520(a). Therefore, as we stated in *Burch v Wargo*, 378 Mich 200, 204; 144 NW2d 342 (1966), MCL 257.520 "applies only when 'proof of financial responsibility for the future' . . . is statutorily required . . . ." See also MCL 257.522 ("This chapter shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state . . . ."); and *State Farm Mut Auto Ins Co v Ruuska*, 412 Mich 321, 336 n 7; 314 NW2d 184 (1982) ("[I]n discussing the requisites for an automobile liability policy issued as proof of future financial responsibility, the Legislature [in MCL 257.520(b)], after requiring an owner's policy to designate by explicit description or appropriate reference all covered motor vehicles, limited the liability coverage to only those automobiles listed in the policy by speaking in terms of the use of 'such' vehicle(s)."). For these reasons, we now clarify that MCL 257.520(f)(1) does not apply to a motor vehicle liability insurance policy unless it has been certified under MCL 257.518 or MCL 257.519 and, to the extent that *Sivey, Anderson,* and *League* suggest otherwise, they are overruled.

This is an important point. *Titan* specifically established that MCL 257.520(f)(1) only restricts the fraud defense as to coverage required under Chapter V of the vehicle code.[27] It also explains why it is not relevant whether a coverage is mandatory because it is only relevant whether the Legislature has restricted the availability of the fraud defense with respect to a particular coverage.

---

[27] MCL 257.501 through MCL 257.532.

Therefore, it is necessary to determine exactly to what coverage the restrictions of MCL 257.520(f)(1) apply. First, it only restricts application of the fraud defense to coverage required in Chapter V. As discussed in the above quotation from *Titan*, the only insurance coverage required in Chapter V is the proof of financial responsibility under MCL 257.518 and MCL 257.519. And that proof of financial responsibility is only required to prevent the suspension of the license, registration, and nonresident driving privileges of a person against whom there is an unsatisfied judgment as defined in Chapter V.[28] Therefore, unless the insured in this case had an outstanding, unsatisfied judgment—and there is no indication that this is the case—then the provisions of MCL 257.520 would simply not apply. This is in contrast to MCL 500.3101 of the no-fault act, which requires that the owner or registrant of a motor vehicle driven on a highway carry certain insurance coverages, including residual liability insurance. And under MCL 500.3131 and MCL 500.3009, the minimum limits are similar to that required under the financial responsibility act. But unlike the provisions of the financial responsibility act, those statutory sections do not restrict the availability of the fraud defense.[29]

Citizens argues that MCL 257.520(f)(1) "only provides authority for policy cancellation or annulment as to the 'insured' " and, therefore, the "statute has absolutely no application to the claim of Ali Bazzi in the instant action, and makes the *Titan v. Hyten* opinion, again, completely distinguishable." While Citizens is

---

[28] MCL 257.512 and MCL 257.513.

[29] This also rebuts the suggestion that the insurer would be liable for $20,000 per person/$40,000 per occurrence in PIP benefits. The provisions of the financial responsibility act are simply inapplicable to no-fault benefits or other coverages required under the no-fault act.

correct that MCL 257.520 is inapplicable to this case, it misses the point of the discussion of the statute in *Titan*. It is not, as Citizens' argument would suggest, that MCL 257.520 must apply for the insurer to deny coverage. Rather, it underscores that MCL 257.520(f)(1), or a similar statute, *must* apply in order to preclude the insurer from denying coverage because of fraud.

Next, Citizens argues that public policy requires us to retain the innocent-third-party rule. But this argument ignores the Supreme Court's criticism of this Court's reliance on public policy in *Kurylowicz* when justifying the easily-ascertainable-fraud rule. In *Titan*,[30] the Court had this to say on the topic:

> First, *Kurylowicz* justified the "easily ascertainable" rule on the basis of its understanding of the "public policy" of Michigan. In light of the Legislature's then recent passage of the no-fault act, MCL 500.3101 *et seq.*, *Kurylowicz* reasoned that
>
>> the policy of the State of Michigan regarding automobile liability insurance and compensation for accident victims emerges crystal clear. It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void *ab initio* after injury covered by the policy occurs. [*Kurylowicz*, 67 Mich App at 574.]
>
> This "public policy" rationale does not compel the adoption of the "easily ascertainable" rule. In reaching its conclusion, *Kurylowicz* effectively replaced the actual provisions of the no-fault act with a generalized summation of the act's "policy." Where, for example, in *Kurylowicz*'s state-

---

[30] 491 Mich at 564-566 (bracketed citation in original).

ment of public policy is there any recognition of the Legislature's explicit mandate that, with respect to insurance required by the act, "no fraud, misrepresentation, . . . or other act of the insured in obtaining or retaining such policy . . . shall constitute a defense" to the payment of benefits? MCL 257.520(f)(1). We believe that the policy of the no-fault act is better understood in terms of its actual provisions than in terms of a judicial effort to identify some overarching public policy and effectively subordinate the specific details, procedures, and requirements of the act to that public policy. In other words, it is the policy of this state that all the provisions of the no-fault act be respected, and *Kurylowicz*'s efforts to elevate *some* of its provisions and *some* of its goals above other provisions and other goals was simply a means of disregarding the stated intentions of the Legislature. The no-fault act, as with most legislative enactments of its breadth, was the product of compromise, negotiation, and give-and-take bargaining, and to allow a court of this state to undo those processes by identifying an all-purpose public policy that supposedly summarizes the act and into which every provision must be subsumed, is to allow the court to act beyond its authority by exercising what is tantamount to legislative power. Third-party victims of automobile accidents have a variety of means of recourse under the no-fault act, and it is to those means that such persons must look, not to a judicial articulation of policy that has no specific foundation in the act itself and was designed to modify and supplant the details of what was actually enacted into law by the Legislature.

The policy concerns raised by Citizens may well have merit. But it is for the Legislature, and not this Court, to determine whether there is merit to those concerns and, if so, the appropriate remedy. While the Legislature might conclude that the appropriate response is to create an innocent-third-party rule, it may choose to address the issue differently. While we can envision any number of policy issues, as well as solutions to those issues, we are judges, not legisla-

tors. It is for the Legislature, not this Court, to consider these issues and determine what response, if any, represents the best public policy. We decline the invitation to legislate into existence an innocent-third-party rule that, thus far, the Legislature has chosen not to adopt.

For these reasons, we conclude the trial court erred by denying summary disposition to Sentinel based on the trial court's erroneous conclusion that the innocent-third-party rule remained viable after our Supreme Court's decision in *Titan*. However, we must decide the appropriate disposition of this matter. Sentinel argues that it is entitled to have summary disposition entered in its favor because a default judgment was entered against Hala and Mariam Bazzi, which rescinded the insurance policy. Citizens argues that that default judgment only operates as a determination against those two parties and not against it or Ali Bazzi. It does not appear that the trial court ultimately resolved this question; therefore, we conclude that the trial court should first address this question on remand.

Accordingly, we remand the matter to the trial court. On remand, there are two questions before the trial court. First, it must determine whether the default judgment against Hala and Mariam Bazzi conclusively established fraud, which would provide a basis for Sentinel to rescind the policy as to all parties, or whether the remaining parties are entitled to litigate the issue of fraud. Next, the trial court must determine whether there is a genuine issue of material fact regarding the fraud issue. If the trial court determines either of those questions in favor of Sentinel, it shall enter summary disposition in favor of Sentinel. If the

trial court rules against Sentinel on both of those questions, then it shall deny summary disposition.[31]

In sum, regardless whether there is one rule or two, and whether we consider a case involving liability coverage or PIP benefits, it all leads back to *Kurylowicz*, and the Supreme Court in *Titan* overruled *Kurylowicz* because *Kurylowicz* ignored the Supreme Court's decision in *Keys v Pace*,[32] which had arguably itself involved easily ascertainable fraud and an innocent third party.[33] Accordingly, we conclude that: (1) there is no distinction between an easily-ascertainable-fraud rule and an innocent-third-party rule, (2) the Supreme Court in *Titan* clearly held that fraud is an available defense to an insurance contract except to the extent that the Legislature has restricted that defense by statute, (3) the Legislature has not done so with respect to PIP benefits under the no-fault act, and (4) the judicially created innocent-third-party rule has not survived the Supreme Court's decision in *Titan*. Therefore, if an insurer is able to establish that a no-fault

---

[31] We acknowledge that, based on a statement made by the trial court at the motion hearing, it seems likely the trial court will rule in Sentinel's favor regarding whether there is a genuine issue of material fact on the issue of fraud. Specifically, the trial court stated as follows:

So if the inquiry ended right there you would say that, *I've already made the determination that Hala Bazzi was fraud*, so you would say, you would agree, *we would all agree that the contract is rescinded*, you would say rescinded with a period right there. [Emphasis added.]

It can certainly be argued that the trial court has already resolved this point and merely went on to hold that the policy cannot be rescinded as to Ali Bazzi solely because of the innocent-third-party rule. Nonetheless, we are not quite prepared to determine that the trial court definitively resolved the issue; therefore, remand is necessary.

[32] 358 Mich 74; 99 NW2d 547 (1959).

[33] See *id.* at 84.

policy was obtained through fraud, it is entitled to declare the policy void *ab initio* and rescind it, including denying the payment of PIP benefits to innocent third parties.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Sentinel may tax costs.

BOONSTRA, J., concurred with SAWYER, P.J.

BOONSTRA, J. (*concurring*). I fully concur in the majority opinion. I write separately because, as a member of the panel that decided *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket Nos. 319709 and 319710),[1] I feel obliged to offer some elucidation for the conflicting conclusion that the majority reaches today and, in doing so, to elaborate somewhat on its reasoning.

In vacating both *State Farm* and another unpublished decision that had reached a contrary conclusion,[2] our Michigan Supreme Court directed that those matters be held in abeyance pending this Court's decision in this case. The panel in this case has now had the benefit of substantial additional briefing and argument both in this case and in the contemporaneously considered case of *AR Therapy Servs, Inc v Farm Bureau Mut Ins Co of Mich*, unpublished opinion per curiam of the Court of Appeals, issued June 14, 2016 (Docket No. 322339), and has had the opportunity to

---

[1] Our Supreme Court subsequently vacated that decision. *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, 498 Mich 870 (2015).

[2] See *Frost v Progressive Mich Ins Co*, unpublished opinion of the Court of Appeals, issued September 23, 2014 (Docket No. 316157), vacated sub nom *Frost v Citizens Ins Co*, 497 Mich 980 (2015).

develop and employ a level of analysis not reflected in either of the panels' earlier unpublished opinions.

Cogent arguments exist on both sides of the issue before us. At first blush, it may appear that we are being asked to disregard decades of published jurisprudence from this Court, in favor of abrogating it based on an interpretation of recent Supreme Court obiter dicta, and to hold that the Supreme Court has already implicitly abrogated it. Were that the case, I would be inclined to conclude that we are bound to follow the binding decisions of this Court[3] and to leave it to the Supreme Court to further develop the law in the current context, if it chooses to do so, by effecting that abrogation explicitly.

I am persuaded, however, as the majority recognizes, that the judicially created doctrine known as the "innocent-third-party rule" is indeed part and parcel of the "easily ascertainable rule" that the Supreme Court abrogated in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012). In *Titan*, the Supreme Court noted that "the 'easily ascertainable' rule . . . only applies when a third-party claimant is involved." *Id*. at 563. Therefore, while its application has been described as denying insurers equitable remedies "when the fraud was easily ascertainable and the claimant is a third party," *id*. at 550, the latter reference (to the claimant being a third party, and presumably thus being innocent of the fraud) really is surplusage because being a third party is a necessary predicate to applying the

---

[3] MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."); MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").

easily-ascertainable-fraud rule in the first place. The Supreme Court further noted that "when it is the insured who seeks benefits under an insurance policy procured through fraud, even an easily ascertainable fraud will not preclude an insurer from availing itself of traditional legal and equitable remedies to avoid liability." *Id*. at 564. Again, that means the easily-ascertainable-fraud rule only applies when the claimant is a third party to the fraud. An insurer may rescind as to a defrauding insured without regard to whether the fraud was easily ascertainable.

I therefore conclude that by rejecting *State Farm Mut Auto Ins Co v Kurylowicz*, 67 Mich App 568; 242 NW2d 530 (1976), and its easily-ascertainable-fraud rule, the Supreme Court must have been rejecting the totality of the rule, whether we refer to it as the easily-ascertainable-fraud rule or the innocent-third-party rule. The reason is that if an insurer may rescind a policy even as to an innocent third party when the fraud was easily ascertainable to the insurer, then it must also be allowed to rescind when the fraud was not easily ascertainable. To conclude otherwise would simply make no sense. Why would an insurer remain accountable to an innocent third party in a situation in which the insurer could *not* have easily discovered the fraud, if it is not accountable to the third party in a situation in which the insurer *could* have easily discovered the fraud? For this reason, in abolishing the easily-ascertainable-fraud rule, the Supreme Court in *Titan* must also have rejected the innocent-third-party rule. This conclusion is bolstered by the fact that the Supreme Court overruled not only *Kurylowicz* but also its "progeny"—such as *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355; 445 NW2d 228 (1989). *Ohio Farmers* did not even address the easily-ascertainable-fraud aspect of the rule but only (insofar as it

is relevant to this case) the innocent-third-party aspect. Yet it was overturned by *Titan*. Therefore, it is inconceivable that in overturning *Kurylowicz* and *Ohio Farmers*, the Supreme Court overturned one aspect of the rule without also overturning the other. This explains the Supreme Court's broad statement in *Titan*, in response to the contention "that the 'easily ascertainable' rule is required for the protection of third parties," that "there is simply no basis in the law to support the proposition that public policy requires a private business in these circumstances to maintain a source of funds for the benefit of a third party with whom it has no contractual relationship." *Titan*, 491 Mich at 568.

Having concluded that the Supreme Court in *Titan* abolished the innocent-third-party rule, I must next address the distinction relied on by the panel in *State Farm*, unpub op at 9-10, i.e., that *Titan* involved optional liability insurance, while *State Farm* (like this case) involves statutory no-fault personal protection insurance (PIP) coverage. The question is: does the distinction matter? I conclude that it does not.

The Supreme Court in *Titan* indeed noted that "when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are *entirely* contractual and construed without reference to the statute." *Titan*, 491 Mich at 554 (emphasis added). This was contrasted with a situation in which "a provision in an insurance policy is mandated by statute," in which case "the rights and limitations of the coverage are governed by that statute." *Id*. The coverage at issue in *Titan* was nonstatutory, purely optional liability coverage. The coverage at issue in this case, by contrast, is PIP coverage that is required by the no-fault act.

However, I conclude that this does not take PIP coverage outside the reach of *Titan*'s conclusion that an insured's fraud makes the equitable remedy of rescission available to the insurer. The Supreme Court said that "because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Id.* It did not say that common-law defenses were only available if the coverage was "entirely" contractual; rather, it stated that common-law defenses are available to contractual insurance policies, but limited in the event that a statute "prohibits" the defense. *Id.*

In *Titan*, there was no statute requiring optional liability coverage, and no statutory prohibition on a contractual defense. Therefore, common-law contract defenses were allowed. Also in *Titan*, the insurer conceded liability (as the panel in *State Farm*, unpub op at 9, noted) for the basic liability coverage that is mandated by the financial responsibility act, MCL 257.501 *et seq. Titan*, 491 Mich at 552 n 2. And the Supreme Court clarified that MCL 257.520 does not apply to all liability policies, but only to those that are required by that act. *Id.* at 559-560. Moreover, the financial responsibility act provides that, as to the basic statutorily required liability coverage, fraud is not a defense. MCL 257.520(f)(1). The statutory disallowance of the fraud defense is therefore limited to the basic required liability coverage mandated by the financial responsibility act. As stated in *Titan*, "the rights and limitations of the coverage are governed" by the financial responsibility act, such that the limitation on the otherwise-available fraud defense applies only to the extent the statute dictates, i.e., only to the basic required liability insurance. *Titan*, 491 Mich at 554.

In this case, by contrast, the statutorily mandated coverage is PIP benefits, not liability coverage; therefore, the financial responsibility act does not apply. See *Titan*, 491 Mich at 595-560; MCL 257.520. Accordingly, the MCL 257.520(f)(1) provision that disallows a fraud defense also does not apply. Instead, we must look to the no-fault act, and it does not contain a similar provision that would disallow a fraud defense in this situation. So in applying *Titan*'s rule that "the rights and limitations of the coverage are governed by th[e] statute," *Titan*, 491 Mich at 554, the no-fault statute at issue does nothing to limit the availability of the otherwise-available fraud defense.

Further, *Titan* quotes from *Couch on Insurance* to the effect that "[the insurance] policy and the statutes relating thereto must be read and construed together as though the statutes were part of the contract . . . ." *Titan*, 491 Mich at 554, quoting 12A Couch, Insurance, 2d (rev ed), § 45:694, pp 331-332. And that would mean that if there were a statutory disallowance of a fraud defense (as there is in MCL 257.520(f)(1)), it would be part of the policy and thus contractually enforceable. If, however, there is no language in the statute (as is the case with the no-fault act) prohibiting a fraud defense, then there is no basis by which to disallow the otherwise-available fraud defense as to PIP coverage. Again, as *Titan* noted, "because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, *unless those defenses are prohibited by statute*." *Id.* (emphasis added). There being no statutory prohibition of the fraud defense in this situation, there is nothing to preclude its invocation here.

Said differently, if, as *Titan* says, we must construe the insurance policy and the statute (here, the no-fault

statute) together as though the statute is part of the contract, *id.*, and there is nothing in the statute to the contrary, the common-law fraud defense remains available to effect a rescission of the policy, and with it, the applicability of the statutory provisions that are otherwise incorporated into the contract. After all, if an insurer only has PIP obligations because it entered into a contract with its insured, and if it is entitled to rescind the contract because of the insured's fraud, then there is no basis for a third party to enforce against this contracting insurer the statutory PIP liabilities that only derive (as to that insurer) from the contract that has been rescinded.

Finally, I note that in prior opinions this Court has justified the innocent-third-party rule in various ways that have ranged from public policy[4] to reliance on our Supreme Court's decision in *Morgan v Cincinnati Ins Co*, 411 Mich 267; 307 NW2d 53 (1981), to the language in MCL 257.520(f) of the financial responsibility act. Of those justifications, two of them (i.e., public policy and MCL 257.520(f)) were expressly rejected by the Supreme Court in *Titan*. *Titan*, 491 Mich at 559-560, 564-565. Additionally, I note that *Morgan* arose in an entirely different context, a fire insurance policy that incorporated a (now-repealed)[5] statutory provision regarding the defense of fraud by the insured. *Morgan*, 411 Mich at 276. The issue in *Morgan* thus involved the interpretation of that statutorily mandated language

---

[4] As the majority notes, there are potentially meritorious public policy issues that the Legislature may wish to consider. However, it is properly the role of the Legislature, not this Court, to consider and address those issues. See *Myers v Portage*, 304 Mich App 637, 644; 848 NW2d 200 (2014). ("[M]aking public policy is the province of the Legislature, not the courts.").

[5] See 1990 PA 305, effective January 1, 1992.

in the policy, not the applicability of a common-law contract defense. *Id*. at 276-277.

In light of this analysis and that of the majority opinion, I simply see no way to continue to apply the innocent-third-party rule in the PIP context. I therefore concur in the majority's determination. Applying *Titan*, when an insurer is able to establish that a no-fault policy was obtained through fraud, it is entitled to declare the policy void *ab initio* and rescind it, including denying the payment of benefits to innocent third parties.

BECKERING, J. (*dissenting*). At issue in this appeal is whether our Supreme Court's decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), which threw out the "easily ascertainable rule," adversely impacted and necessarily abrogated the "innocent-third-party rule," which I maintain is a distinctly different rule and one to which this Court has adhered for decades without complaint or redirection from either our Supreme Court or our Legislature. With all due respect for my esteemed colleagues, I would conclude that the easily-ascertainable-fraud and innocent-third-party rules are not "one and the same," and caselaw bears out a clear distinction. Furthermore, because they are different rules and because the coverage at issue in *Titan*—contractually based excess liability coverage—is substantially different from the type of coverage at issue in this case—statutorily mandated benefits—I would decline to extend *Titan* and would instead adhere to 30 years of this Court's published decisions applying the innocent-third-party rule. In this respect, I would affirm the decision of the circuit court, save for the circuit court's decision to limit personal protection insurance (PIP) benefits to

the statutory minimums set forth in MCL 257.520, which does not apply to the coverage at issue.

### I. THE INNOCENT-THIRD-PARTY RULE IS NOT THE SAME AS THE EASILY-ASCERTAINABLE-FRAUD RULE

Before diving into the effect of *Titan*, I would be remiss not to address the majority and concurring opinions' conclusion that the easily-ascertainable-fraud rule and the innocent-third-party rule are one and the same. They are not. My colleagues conclude that they are the same in part because they both necessarily involve an innocent third party. While this observation is accurate, any attempt to equate them disregards the context in which they have been used and overlooks pertinent caselaw. The innocent-third-party rule has consistently been applied to prevent an insurer from avoiding liability as to *mandatory* coverage—namely PIP benefits, while the easily-ascertainable-fraud rule had, before it was overruled in *Titan*, consistently been applied to prevent an insurer from avoiding *optional* coverage, i.e., nonstatutory coverage, when the insured's fraud was easily ascertainable. See, e.g., *Farmers Ins Exch v Anderson*, 206 Mich App 214; 520 NW2d 686 (1994), overruled by *Titan*, 491 Mich 547; *State Farm Mut Auto Ins Co v Kurylowicz*, 67 Mich App 568; 242 NW2d 530, overruled by *Titan*, 491 Mich 547.

The difference between the rules can be put simply: the innocent-third-party rule acts as a prohibition against rescinding a policy that was procured by fraud, *but only as to mandatory coverage*—specifically PIP coverage—for innocent third parties, while the now-overruled easily-ascertainable-fraud rule prevented a defrauded insurer from avoiding liability with respect to *optional coverage*. Stated differently, the innocent-third-party rule concerns statutory benefits, and the

easily-ascertainable-fraud rule pertains to benefits originating in the insurance policy. Thus, the rules serve distinct purposes and relate to different types of insurance coverage. This Court has recognized this very principle in the past. See *Manier v MIC Gen Ins Corp*, 281 Mich App 485, 489-492; 760 NW2d 293 (2008), overruled by *Titan*, 491 Mich 547; *Lake States Ins Co v Wilson*, 231 Mich App 327, 331-332; 586 NW2d 113 (1998); *Anderson*, 206 Mich App at 216-219. For instance, in *Anderson*, 206 Mich App at 217, a case that was overruled by *Titan* for its application of the easily-ascertainable-fraud rule, the insurer, much like the insurer in *Titan*, conceded liability for the statutorily mandated $20,000/$40,000 limits found in MCL 257.520(f)(1).[1] The issue before this Court was whether the insurer, "upon discovering that the insured has made fraudulent and material misrepresentations in procuring the policy, may assert rescission as a basis to limit its liability to the statutory minimum, even when innocent third parties have been injured." *Anderson*, 206 Mich App at 217. In resolving this issue, the panel noted the innocent-third-party rule and declared that, in light of the rule, the insurer conceded it could not rescind the policy as to *statutorily mandated coverage*, i.e., the $20,000 and $40,000 limits imposed by MCL 257.520(f)(1). *Id.* at 218. This, of course, was required, in large part, by MCL 257.520(f)(1).[2] Nevertheless, the insurer sought to limit its liability for *optional, nonstatutory coverage*. Optional liability coverage, which is addressed in MCL 257.520(g), does not include the same statutory limitation on obtaining rescission in

---

[1] This was the precise situation in *Titan*, 491 Mich at 552 n 2, as the insurer expressly acknowledged its liability for mandatory coverage and only sought to rescind the policy as to excess or optional liability coverage.

[2] MCL 257.520(f)(1) does not require *innocence*.

the case of fraud. *Anderson*, 206 Mich App at 218-219. Accordingly, "when fraud is used as a defense in situations such as these," the panel explained, "the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into." *Id.* at 219. In other words, the easily-ascertainable-fraud rule was to be applied to determine whether the insurer could rescind the policy *as it pertained only to optional liability coverage.*[3] So long as the fraud was not easily ascertainable, the insurer could void the policy as to this optional liability coverage. *Id.* If the fraud was easily ascertainable, the burden was essentially on the insurer for not having discovered and dealt with it. A review of our caselaw reveals that the easily-ascertainable-fraud rule has a history of application to optional liability coverage. See, e.g., *Titan*, 491 Mich 547; *Manier*, 281 Mich App 485; *Kurylowicz*, 67 Mich App 568.

The panel in *Wilson*, 231 Mich App at 331-332, in a slightly different factual scenario involving PIP benefits, reinforced the idea that the rules are not the same, specifying that the innocent-third-party rule acted as a bar against rescinding a policy as it concerns statutorily mandated benefits, and that the easily-

---

[3] The panel in *Anderson* even went so far as to clarify that the easily-ascertainable-fraud rule applied only in situations where fraud was asserted as a means for avoiding optional liability coverage. *Anderson*, 206 Mich App at 219 ("Despite the holdings in *Ohio Farmers* [*Ins Co v Mich Mut Ins Co*, 179 Mich App 355, 358, 364-365; 445 NW2d 228 (1989)] and *Katinsky* [*v Auto Club Ins Ass'n*, 201 Mich App 167; 505 NW2d 895 (1993)], we do not go so far as to say that a validly imposed defense of fraud will absolutely void any optional excess insurance coverage in all cases. To the contrary, when fraud is used as a defense in situations such as these, the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into.").

ascertainable-fraud rule pertained to an insurer's attempts to limit its liability as to optional coverage.[4] The panel in *Wilson* applied the same type of bar against rescission as found in MCL 257.520(f)(1) to PIP benefits based on their mandatory nature. The panel summarized the innocent-third-party rule and the easily-ascertainable-fraud rule and their respective applications as follows:

> Once an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer is estopped from asserting fraud to rescind the insurance contract. *However, an insurer is not precluded from rescinding the policy to void any 'optional' insurance coverage, unless the fraud or misrepresentation could have been 'ascertained easily' by the insurer. [Id.* at 331-332 (citations omitted; emphasis added).]

Thus, as is apparent from this Court's opinion in *Wilson*, the innocent-third-party rule and the easily-ascertainable-fraud rule are different. The innocent-third-party rule concerns mandatory coverage and arises from the fact that the coverage is mandatory, while the easily-ascertainable-fraud rule applies to optional coverage. Essentially, the innocent-third-party rule is a rule that applies to PIP benefits and protects entitlement to those benefits. Consistently with this rationale, this Court has applied the

---

[4] In *Wilson*, a case that involved PIP benefits, the insurer sought to reform the noncoordinated policy, on the basis of fraud, into a policy that was coordinated with the insured's health insurance, thereby relieving the insurer of the obligation to pay duplicative medical benefits to the insured. *Wilson*, 231 Mich App at 331-332. Concluding that noncoordinated coverage was optional under the no-fault act, the panel determined that the innocent-third-party rule did not preclude the reformation sought by the insurer. *Id.* at 332-333. And because the fraud at issue in that case was not easily ascertainable, the panel ruled that the insurer could reform the contract in the manner it sought. *Id.* at 333-334.

innocent-third-party rule in the context of PIP benefits. See, e.g., *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 360; 764 NW2d 304 (2009), overruled in part on other grounds *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503; 821 NW2d 117 (2012).

This distinction is of critical importance to the instant case, as the concern in this case is with mandatory PIP benefits, not optional excess liability coverage.[5] Moreover, this distinction explains away with relative ease the result that the majority opinion describes as "bizarre" and the concurring opinion says "simply make[s] no sense." That is, in concluding that the easily-ascertainable-fraud rule and the innocent-third-party rule are essentially the same, both the majority opinion and the concurring opinion postulate that the rules must be treated as the same, because if an insurer can avoid liability when fraud is easily ascertainable, it must logically be able to avoid liability when the fraud was not easily ascertainable. If we were truly dealing with rules that applied in the same context and to the same type of coverage, this concern would be a valid one. However, given that caselaw has clearly applied the innocent-third-party rule to mandatory coverage, whereas the easily-ascertainable-fraud rule has been applied to optional coverage, the rules can be reconciled, and the concerns of the majority and concurring opinions quickly dissipate. With regard to mandatory coverage, whether the fraud was easily ascertainable matters not; the insurer is not permitted to rescind once an innocent third party is injured. However, with regard to optional coverage, the insurer is only prevented from rescinding the policy as it concerns such optional coverage if the fraud was easily

---

[5] This distinction is discussed in more detail later in this opinion.

ascertainable. Our Supreme Court in *Titan* did away with the bar against an insurer rescinding optional coverage in the face of easily ascertainable fraud.

I take issue with the majority and concurring opinions' conclusions that our Supreme Court's decision in *Titan* necessarily recognized that the innocent-third-party rule and the easily-ascertainable-fraud rule are one and the same. In fact, our Supreme Court in *Titan* made no mention of the innocent-third-party rule, nor did it weigh in on whether fraud could be asserted as a basis to avoid liability in the context of statutorily mandated benefits. The subject of statutorily mandated coverage was simply not before the Court in *Titan*, as the insurer in that case expressly conceded its liability for mandatory coverage and only sought a declaration "that it was not obligated to indemnify [the insured] for any amounts *above* the minimum liability coverage limits required by the financial responsibility act . . . ." *Titan*, 491 Mich at 552 n 2. Hence, the issue before the *Titan* Court was the application of the easily-ascertainable-fraud rule, and *Titan* did not implicate the innocent-third-party rule.

Along similar lines, I note that the majority and concurring opinions observe that our Supreme Court in *Titan* overruled this Court's decision in *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355, 358, 364-365; 445 NW2d 228 (1989), and conclude that: (1) *Ohio Farmers* discussed the innocent-third-party rule and (2) therefore, the Supreme Court in *Titan* must have necessarily overruled the innocent-third-party rule. Assuming that the decision in *Ohio Farmers* implicated the innocent-third-party rule, I disagree with my colleagues' conclusions. First, our Supreme Court in *Titan*, 491 Mich at 551 n 1, did not make any

sweeping declarations about *Ohio Farmers*;[6] rather, it only overruled the case "[t]o the extent" that it "held or stated that an insurer is estopped from denying coverage on the basis of fraud when it could have easily ascertained the fraud . . . ." This language is in line with the easily-ascertainable-fraud rule, not the innocent-third-party rule. Noticeably absent from this qualified and narrow rejection of *Ohio Farmers* is any discussion about whether an insurer can deny *mandatory*, statutorily required coverage to an innocent third party on the basis of fraud. Thus, even assuming that *Ohio Farmers* only implicated the innocent-third-party rule, an assumption that is not entirely apparent from the text of the *Ohio Farmers* decision, the Court in *Titan* made no comment about the innocent-third-party rule. Second, contrary to what the majority and concurring opinions postulate—and regardless of what *Ohio Farmers* actually says—our Supreme Court in *Titan* seemed to think that *Ohio Farmers* concerned the easily-ascertainable-fraud rule. See *Titan*, 491 Mich at 563-564 ("[U]nder the *Kurylowicz* rule, an insurer may not avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud when the fraud was *easily ascertainable and the claimant is a third party*. See, e.g., *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355; 4[4]5 NW2d 228 (1989).") (emphasis added). Accordingly, any suggestion that *Titan* was overruling *Ohio Farmers* for some other reason—for

---

[6] *Ohio Farmers*, a somewhat curious decision that this Court later backed away from in *Anderson*, 206 Mich App at 219, cited *Kurylowicz*, but only for its "policy considerations." See *Ohio Farmers*, 179 Mich App at 363. Thus, as the majority and concurring opinions correctly note, *Ohio Farmers* does not appear to implicate the easily-ascertainable-fraud portion of the *Kurylowicz* decision, despite what our Supreme Court believed to be the case in *Titan*. See *Titan*, 491 Mich at 563-564.

instance, that it discussed the innocent-third-party rule—is not apparent from the Court's decision in *Titan*. Third, and on a somewhat related note, I disagree that *Titan*'s qualified overruling of *Ohio Farmers* can be construed to reject a rule that *Titan* itself never mentioned.[7]

Aside from taking issue with the conclusion that the rules are one and the same, I take issue with the majority opinion's conclusion that both the easily-ascertainable-fraud rule and the innocent-third-party rule "have their roots in the *Kurylowicz* decision." Examination of the case conclusively dispels the notion that the innocent-third-party rule was sired by *Kurylowicz*. Indeed, the sole concern in *Kurylowicz* was whether an insurer has a duty to investigate representations made by an insured, and the panel in *Kurylowicz* expressly rejected the opportunity to weigh in on the innocent-third-party rule. Also, there is no indication that *Kurylowicz* involved a claim for mandatory coverage.

In *Kurylowicz*, 67 Mich App at 569, the plaintiff, State Farm, appealed as of right a declaratory judgment that stated it was not allowed to rescind a policy for optional,[8] or nonstatutorily mandated, liability coverage *ab initio* when the policy was procured through fraud. In that case, the insured, defendant Robert J. Kurylowicz, made a material misrepresen-

---

[7] This is not to say, however, that there are no reasonable arguments as to whether portions of the *Titan* decision cast doubt on the innocent-third-party rule. Those arguments are discussed later in this opinion.

[8] Although not expressly stated in the *Kurylowicz* opinion, it is apparent that the liability coverage was *optional* liability coverage. Indeed, the policy at issue in *Kurylowicz* was issued before enactment of the no-fault act, see *Kurylowicz*, 67 Mich App at 573, and at that time, "motorists could choose whether or not to carry liability insurance," *Coburn v Fox*, 425 Mich 300, 308; 389 NW2d 424 (1986).

tation in his application for insurance when answering the question whether his driver's license had ever been revoked or suspended. *Id.* at 570. State Farm, which relied on our Supreme Court's decision in *Keys v Pace*, 358 Mich 74; 99 NW2d 547 (1959), argued that an insurer was entitled to rescind a policy on the basis of a material misrepresentation and that there was no duty imposed on the insurer to investigate the subject of the alleged fraud.[9] *Kurylowicz*, 67 Mich App at 571.

This Court, in an effort to avoid the application of *Keys*, noted that our Legislature had amended various statutes since our Supreme Court issued *Keys*, including statutes regarding the cancellation of insurance policies, MCL 500.3220, and the motor vehicle accident claims act, MCL 257.1101 *et seq.*, which the panel described as providing compensation for citizens injured by uninsured tortfeasors. *Kurylowicz*, 67 Mich App at 573. Further, this Court noted that although the case currently before it was not controlled by the no-fault act, the enactment of the no-fault act, MCL 500.3101 *et seq.*, reflected a legislative policy of providing compensation to lessen "the tragic social and economic consequences that often accompany automobile

---

[9] The refusal to impose on insurers the burden of investigating representations by the insured was the premise of the holding in *Keys*:

> Moreover, if inquiry is to be demanded, is it enough to stop with the traffic court? Might not the accident suggest physical or psychiatric defects? Should investigations not also be made of the past hospitalizations of the insured? Where will we say this may stop within the existing economic framework? It is doubtful whether one who deliberately sets out to swindle an insurance company can be prevented from so doing by any such requirement, and it is even more doubtful that there is enough of this practice to warrant the placing upon the insurance business of a requirement so onerous. [*Keys*, 358 Mich at 84.]

mishaps." *Kurylowicz*, 67 Mich App at 573.[10] Reading the legislative enactments as a whole, this Court arrived at the idea that the statutes formulated a "policy" of providing "persons who suffer loss due to the tragedy of automobile accidents in this state . . . a source and a means of recovery." *Id*. at 574. "Given this policy," said the panel, "it is questionable whether a policy of automobile insurance can ever be held void *ab initio* after injury covered by the policy occurs." *Id*.[11]

With that "policy" as a backdrop, the panel cited a treatise for the proposition that an insurer's liability *"with respect to insurance required by the act"* becomes absolute "whenever injury or damage covered by such policy occurs . . . ." *Id*. (citation and quotation marks omitted). However, the panel was quick to observe that "[t]hat issue is not before us in this case"—whether liability *with respect to insurance required by law* became absolute upon the happening of an injury— "so we need not decide it." *Id*. Hence, the panel expressly declined to comment on the innocent-third-party rule—which is implicated in situations involving the "liability of the insurer with respect to insurance required by the [no-fault] act." *Id*. (quotation marks and citation omitted). Instead, stated the panel, "[w]e need only decide whether, under the facts of the case at bar, *State Farm reasonably relied on the representations of the insured* so as to justify a holding

---

[10] In fact, the panel, recognizing that the cause of action in that case accrued before the enactment of the no-fault act, expressly stated that because the cause of action did not concern the no-fault act, "our holding in this case cannot be precedent for actions arising after the effective date of no-fault . . . ." *Kurylowicz*, 67 Mich App at 573.

[11] Despite the Supreme Court's criticism in *Titan* about *Kurylowicz*'s policy arguments—discussed in more detail later in this opinion—I would be remiss not to note that in *Coburn*, 425 Mich at 310 n 3, our Supreme Court cited with approval this very same policy rationale from *Kurylowicz*.

that the policy was procured by fraud, thus warranting a judicial determination that the policy was void *ab initio*." *Id*. (first emphasis added).

The panel's framing of this issue is of particular significance and illustrates the fatal flaw in the majority opinion's conclusion that *Kurylowicz* created the innocent-third-party rule. The focus of the issue in that case was the insurer's reasonable reliance, or lack thereof, on the insured's representations. And when the panel mentioned the scenario that implicates the innocent-third-party rule—liability mandated by statute and an injured third party—it *expressly declined* to consider it in any detail. It cannot reasonably be argued that *Kurylowicz* created a rule it took special care to avoid.

Indeed, the only issue in *Kurylowicz* concerned whether the insurer should have accepted certain representations at face value, or whether the insurer should have discovered that the representations were false. The rest of the opinion in *Kurylowicz* was spent answering that question, and only that question, as evidenced by the panel citing caselaw from other jurisdictions that imposed on an insurer a duty to investigate representations made by insureds in insurance applications. *Id*. at 574-577, citing *Allstate Ins Co v Sullam*, 76 Misc 2d 87; 349 NYS2d 550 (1973); *State Farm Mut Ins Co v Wood*, 25 Utah 2d 427; 483 P2d 892 (1971); *Barrera v State Farm Mut Auto Ins Co*, 71 Cal 2d 659; 79 Cal Rptr 106; 456 P2d 674 (1969); *State Farm Mut Auto Ins Co v Wall*, 92 NJ Super 92; 222 A2d 282 (NJ Sup Ct, 1966). The panel then went on to impose a duty on the insurer in that case to make a reasonable investigation of an insured's representations in an application for insurance. This is precisely contrary to the tenets of *Keys*.

Because the instant case does not involve the imposition of a duty on an insurer to investigate representations made by a prospective insured, and given that *Titan* overruled *Kurylowicz* for failing to follow the precedent established in *Keys*, *Kurylowicz* is not dispositive in this case. Likewise, any assertion that the innocent-third-party rule is the same as the easily-ascertainable-fraud rule set forth in *Kurylowicz* is incorrect and does not resolve the issue in this case. However, that does not end the inquiry; it merely ferrets out a red herring proffered by the majority and concurring opinions. Indeed, although the Supreme Court in *Titan* overruled *Kurylowicz* for ignoring precedent established in *Keys*, the Court's opinion went beyond merely overruling this Court's decision for ignoring Supreme Court precedent. Notably, for purposes of this opinion, the Court in *Titan* went on to: (1) clarify the conditions under which a policy for insurance may be rescinded and (2) decry what it described as the "reasoning" employed by *Kurylowicz*. It is in those aspects of *Titan* that the parties argue the Court eroded the support on which the innocent-third-party rule rests and which require extensive discussion in this case. To resolve the more pertinent issue of whether the Court's analysis in *Titan* erodes support for the innocent-third-party rule, I find it necessary to examine *Titan*, as well as the origins and development of the innocent-third-party rule.

## II. THE INNOCENT-THIRD-PARTY RULE

The innocent-third-party rule has been firmly entrenched in this Court's jurisprudence for the past three decades and has never been questioned by our Supreme Court, nor has it prompted the Legislature to revise the no-fault law. In general, an insurer may

rescind a policy *ab initio* because of fraud. *Roberts*, 282 Mich App at 359-360. However, under the innocent-third-party rule, "an insurer may not void a policy of insurance *ab initio* where an innocent third party is affected" and the type of coverage at issue is mandatory coverage. *Id.*[12] As stated in *Roberts*, "caselaw demonstrates that the innocent third party doctrine ensures coverage for any person who is innocent of participation in the alleged fraud." *Id.* at 361.

For decades, this Court has adhered to the innocent-third-party rule in cases in which the insured sought statutory, i.e., nonoptional, benefits and precluded insurers from denying coverage to injured third parties who were innocent of the insured's fraud. See, e.g., *Wilson*, 231 Mich App at 331; *Hammoud v Metro Prop & Cas Ins Co*, 222 Mich App 485, 488; 563 NW2d 716 (1997); *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517 n 2; 540 NW2d 480 (1995); *Auto-Owners Ins Co v Johnson*, 209 Mich App 61, 64; 530 NW2d 485 (1995); *Katinsky v Auto Club Ins Ass'n*, 201 Mich App 167, 170; 505 NW2d 895 (1993); *Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 9; 369 NW2d 243 (1985); *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 477; 350 NW2d 283 (1984); *United Security Ins Co v Comm'r of Ins*, 133 Mich App 38, 43; 348 NW2d 34 (1984).[13] In fact, our Supreme Court has also protected innocent parties from the fraud of others in the context of insurance policies, albeit in a case dealing with a "statutory fire insurance policy." See

[12] Like other cases applying the innocent-third-party rule, *Roberts* was a case involving an insured's application for mandatory PIP benefits, not optional liability coverage. See *id.* at 346-347.

[13] In addition, we note that Michigan is not alone in applying the innocent-third-party rule in the context of automobile insurance. See 7 Am Jur 2d, Automobile Insurance, § 61, pp 566-568 (summarizing the law from various jurisdictions).

*Morgan v Cincinnati Ins Co*, 411 Mich 267, 277; 307
NW2d 53 (1981). ("[W]henever the statutory clause
limiting the insurer's liability in case of fraud by the
insured is used it will be read to bar only the claim of
an insured who has committed the fraud and will not
be read to bar the claim of any insured under the policy
who is innocent of fraud."). Yet as the parties point out,
although this Court's precedent with regard to the
innocent-third-party rule is well established, the ratio-
nale and reasoning cited for the existence of the rule
has varied. For instance, this Court's justifications for
the innocent-third-party rule have ranged from public
policy, *Katinsky*, 201 Mich App at 171, to reliance on
our Supreme Court's decision in *Morgan*, *Darnell*, 142
Mich App at 10, to the language in MCL 257.520(f)[14] of
the financial responsibility act, *Wilson*, 231 Mich App
at 331. Despite the varying rationales employed in
arriving at the innocent-third-party rule, its applica-
tion has, until recently, been fundamental.

The challenges raised against the innocent-third-
party rule come from claims by Sentinel and others
that our Supreme Court's decision in *Titan*, 495 Mich
547, implicitly overruled the innocent-third-party rule.
Accordingly, our Supreme Court's decision in *Titan*
must be examined.

### III. *TITAN v HYTEN*

While much is being made about what *Titan* says
and implies, it is helpful to focus first on what *Titan*
does not say. For example, and most notably, the
innocent-third-party rule was *not* at issue in *Titan*, 491

---

[14] As will be explained in more detail later in this opinion, MCL
257.520(f)(1) prohibits an insurer from avoiding liability up to certain
statutory minimums for liability coverage, and pursuant to *Titan*, it is
not applicable to the PIP benefits at issue in this case.

Mich 547. In addition, *Titan* did not involve no-fault PIP benefits, nor did it involve any other statutorily required benefits. Rather, in *Titan*, our Supreme Court examined the so-called "easily ascertainable" fraud rule and addressed whether, in a case involving excess liability coverage, an insurer could rescind that coverage on the basis of fraud in the procurement of the policy when the fraud was easily ascertainable by the insurer. *Id.* at 550-551. In *Titan*, McKinley Hyten, whose mother, Anne Johnson, had made fraudulent misrepresentations in her application for no-fault insurance, was involved in a motor vehicle accident with Howard and Martha Holmes. *Id.* at 552. Anticipating that the Holmeses would file a third-party tort claim against Hyten for their injuries, Titan sought to rescind the excess liability coverage because of Johnson's material misrepresentations. *Id.* In particular, Titan requested declaratory relief stating that should the Holmeses prevail in an action against Hyten, Titan was not required to provide liability coverage under the policy in excess of the statutory minimums set forth in MCL 257.520 of the financial responsibility act.[15] The trial court held that the easily-ascertainable-fraud rule applied and prevented Titan from avoiding liability because the alleged fraud was easily ascertainable.[16] *Id.* This Court affirmed, relying on a line of decisions dating back to *Kurylowicz*, 67 Mich App 568, in which the insurer's attempt to rescind the particular insured's policy for optional coverage because of fraud by

---

[15] Titan expressly acknowledged its responsibility for the minimum liability coverage limits—$20,000 per person/$40,000 per occurrence—required under the financial responsibility act. *Titan*, 491 Mich at 552 n 2. For that reason, statutorily mandated benefits were not at issue in *Titan*.

[16] The alleged fraud was in regard to whether Hyten possessed a valid driver's license at the time of the application for insurance.

the insured in the policy application was rejected because the fraud was easily ascertainable by the insurer. *Titan Ins Co v Hyten*, 291 Mich App 445, 454-458, 461-462; 805 NW2d 503 (2011), rev'd 491 Mich 547.

In examining the viability of the easily-ascertainable-fraud rule, the Supreme Court in *Titan* began by recognizing that insurance policies are contracts, and that, "when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute." *Titan*, 491 Mich at 554. *Titan, id.*, cited *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW 2d 310 (1993), for the proposition that "because personal injury protection benefits are mandated by MCL 500.3105, that statute governs issues regarding an award of those benefits." *Titan* noted that conversely, "when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual and construed without reference to the statute." *Titan*, 491 Mich at 554. In addition, "because insurance policies are contracts, common-law defenses"—such as fraud—"may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Id.*

The Court then looked at the various common-law doctrines of fraud that exist in Michigan and concluded that common-law fraud did not include as an element that the party asserting the fraud prove the fraud was not easily ascertainable. For this reason, the common-law doctrines of fraud did not support the existence of the easily-ascertainable-fraud rule. *Id.* at 555-557.

Next, the Court looked at the different remedies available in those instances in which a contract was procured by fraud. *Id.* at 557-558. Because contracts

must be construed in conjunction with the applicable law, the Court recognized that common-law remedies "may be limited or narrowed by statute." *Id.* at 558. For instance, MCL 257.520(f)(1) of the financial responsibility act "limits the ability of an insurer to avoid liability on the ground of fraud in obtaining a motor vehicle liability policy with respect to the insurance required by" the financial responsibility act—$20,000 for bodily injury or death to one person, and $40,000 for bodily injury or death to two or more persons—even in the face of fraud or misrepresentations. *Id.*, citing MCL 257.520(f)(1). However, the *Titan* Court concluded that the limitation imposed by MCL 257.520(f)(1) was limited to a liability policy that was certified under the financial responsibility act. *Id.* at 559-560.[17] Therefore, the Court found no statutory limitations on the right to rescind a policy with regard to excess liability coverage, i.e., nonstatutory coverage. *Id.*

With this backdrop, the Court turned its attention to the easily-ascertainable-fraud rule, concluding that its earlier decision in *Keys*, 358 Mich 74, was outcome-determinative in that *Keys* had rejected the easily-ascertainable-fraud rule over 50 years ago. *Titan*, 491 Mich at 562 ("*Keys* answered the precise question presented in this case[,] . . . holding that an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud, notwithstanding that the fraud

---

[17] As recognized by the *Titan* Court, MCL 257.520(f)(1)—which is part of the financial responsibility act—does not apply to PIP benefits under the no-fault act. *Id.* at 559-560. Of note, the financial responsibility act was enacted 24 years before the no-fault act. Hence, our Supreme Court in *Titan* discerned the Legislature's intended scope and applicability of MCL 257.520(f)(1) with respect to an act that did not exist when MCL 257.520(f)(1) was enacted.

may have been easily ascertainable, and notwithstanding that the claimant is a third party.").

Our Supreme Court noted that despite the fact that *Keys* had rejected the easily-ascertainable-fraud rule, this Court later reached the opposite conclusion in *Kurylowicz*; for this reason, *Titan* overruled *Kurylowicz* because it had ignored Supreme Court precedent. *Titan*, 491 Mich at 572-573. In addition, the Court went on to decry the reasoning employed in *Kurylowicz*.[18] The Court first noted that *Kurylowicz* had justified the easily-ascertainable-fraud rule on the basis of what it determined to be the "public policy" of the no-fault act. *Titan*, 491 Mich at 564-565. However, our Supreme Court rejected the idea that public policy supported the rule, explaining that the public policy of the no-fault act should be understood in terms of the provisions of the act itself, and not "in terms of a judicial effort to identify some overarching public policy . . . ." *Id.* at 565. "In other words, it is the policy of this state that all the provisions of the no-fault act be respected, and *Kurylowicz*'s efforts to elevate *some* of its provisions and *some* of its goals above other provisions and other goals was simply a means of disregarding the stated intentions of the Legislature." *Id.*

Next, in rejecting the purported justifications for the easily-ascertainable-fraud rule, the Court rebuffed the idea that MCL 500.3220[19]—which concerns the cancel-

---

[18] The reasoning employed by the Court when it rejected the easily-ascertainable-fraud rule forms the basis of Sentinel's argument that the innocent-third-party rule did not survive *Titan*.

[19] MCL 500.3220 provides:

   Subject to the following provisions no insurer licensed to write automobile liability coverage, after a policy has been in effect 55 days or if the policy is a renewal, effective immediately, shall cancel a policy of automobile liability insurance except for any 1 or more of the following reasons:

lation of automobile liability policies and restricts the ability of the insurer to cancel a policy—did not preclude an insurer from uncovering fraud and pursuing remedies aside from cancellation, such as rescission. *Id.* at 566-567. In this regard, the Court noted that rescission is a remedy that is distinct from cancellation. *Id.* at 567-568.

Finally, in concluding that there was no support in the law for the easily-ascertainable-fraud rule, the Court considered—and rejected—the idea that the rule was "required for the protection of third parties." *Id.* at 568. The Court explained that "there is simply no basis in the law to support the proposition that public policy requires a private business in these circumstances to maintain a source of funds for the benefit of a third party with whom it has no contractual relationship." *Id.* The no-fault act protects third parties "in a variety of ways," reasoned the Court—including allowing tort actions—"but it states nothing about altering the common law that enables insurers to obtain traditional forms of relief when they have been the victims of fraud." *Id.* at 568-569. The Court further explained that requiring an insurer to indemnify an insured in spite of fraud "relieves the insured of what would otherwise be the insured's personal obligation in the face of his or her own misconduct. As between the fraudulent insured and the insurer, there can be no question that the former should bear the burden of his

(a) That during the 55 days following the date of original issue thereof the risk is unacceptable to the insurer.

(b) That the named insured or any other operator, either resident of the same household or who customarily operates an automobile insured under the policy has had his operator's license suspended during the policy period and the revocation or suspension has become final.

or her fraud." *Id.* at 569. In other words, an insured is not entitled to benefit from the protection of excess liability insurance coverage above the statutorily required minimum when he or she purchased that coverage through fraud.

### IV. THE INNOCENT-THIRD-PARTY RULE AFTER *TITAN*

Before weighing in on the issue of whether *Titan* affects the validity of the innocent-third-party rule in the context of statutorily required PIP benefits, I note that this Court has already had occasion to examine this matter, albeit in unpublished opinions. See *Frost v Progressive Mich Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued September 23, 2014 (Docket No. 316157); *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket Nos. 319709 and 319710). Those two cases, however, came to opposite conclusions. Rather than grant leave to appeal in one or both of those cases and resolve firsthand the breadth of its intentions in *Titan* and whether its rationale should be extended to the innocent-third-party rule and statutorily mandated PIP benefits, our Supreme Court came to the somewhat perplexing conclusion that it should vacate both of those decisions, remand the cases to this Court, order this Court to accept as on leave granted yet another case regarding this issue—the instant case— and hold in abeyance any further rulings in *Frost* and *State Farm* pending our resolution in this matter.[20] Hence, I will briefly address *Frost* and *State Farm* and

---

[20] See *Frost v Citizens Ins Co*, 497 Mich 980 (2015); *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, 498 Mich 870 (2015).

the reasoning provided by each panel in coming to its conclusion on the issue at hand.

### A. *FROST v PROGRESSIVE*

The first case following *Titan* to examine the innocent-third-party rule in the context of PIP benefits was *Frost*. In *Frost*, Kenya Frost's minor daughter was injured in an accident while a passenger in an uninsured automobile. Citizens Insurance Company was assigned by the assigned claims plan to Frost's daughter's claim. Progressive had issued a policy of insurance to Frost on her own vehicle, which had been destroyed one month before Frost's daughter's accident. Citizens Insurance Company sought reimbursement from Progressive for the benefits it had paid on Frost's daughter's behalf.[21] *Frost*, unpub op at 1-2. Progressive claimed that it had rescinded Frost's policy *ab initio* because Frost had procured the policy through fraud. Citizens argued that the innocent-third-party rule barred Progressive's attempt to rescind as it pertained to Frost's daughter. In response, Progressive contended that *Titan* had effectively eliminated the innocent-third-party rule. The trial court concluded that because the accident involving Frost's daughter had occurred before Progressive attempted to rescind the policy, once the accident occurred Progressive lost its ability to rescind as to Frost's daughter. *Id.* at 2. In short, the trial court applied the innocent-third-party doctrine.

On appeal in this Court, the panel overturned the trial court and held that its ruling was "inconsistent with our Supreme Court's holding" in *Titan*. *Id*. The panel explained:

---

[21] Citizens intervened in Frost's lawsuit against Progressive in which Frost sought to obtain reimbursement for losses incurred when her car was destroyed.

In [*Titan*], our Supreme Court held that absent statutory provisions to the contrary, "an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party." [*Titan*, 491 Mich at 571.] Accordingly, the claim by Frost's daughter did not bar Progressive from rescinding the policy in this case. [*Frost*, unpub op at 2.]

### B. *STATE FARM v MICH MUNI RISK MGT AUTH*

Five months after *Frost* was issued, this Court reached the opposite conclusion in *State Farm*.[22] Pertinent to the present matter, one of the insurers in that case sought to rescind a policy for no-fault PIP benefits *ab initio* because it alleged that the policy had been procured by fraud.[23] *State Farm*, unpub op at 4. The trial court disagreed, concluding that because coverage was required under the no-fault act, the policy could not be rescinded after an innocent third party sustained injuries that would have otherwise been covered under the policy. *Id.* at 5.

On appeal, a panel of this Court examined the innocent-third-party rule and recognized that "[t]his Court has generally denied an insurer's right to rescind a policy of insurance in order to avoid payment of no-fault benefits to an innocent third party[.]" *Id.* at 9, citing *Hammoud*, 222 Mich App at 488. "Thus," the panel explained, " '[o]nce an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer is

---

[22] As he acknowledges in his concurring opinion in this case, Judge BOONSTRA was on the panel in *State Farm*. As my dissenting opinion makes clear, I think he and his panel got it right in *State Farm*.

[23] QBE Insurance Corporation is the insurer that sought to rescind its policy.

estopped from asserting fraud to rescind the insurance contract.' " *State Farm*, unpub op at 9, quoting *Katinsky*, 201 Mich App at 170 (citation omitted; alteration in *State Farm*).

The relevant insurer in that case argued that the innocent-third-party rule was abrogated by our Supreme Court's decision in *Titan*, 491 Mich 547. The panel disagreed, explaining that *Titan* involved a different type of coverage—optional, excess liability coverage—rather than the mandatory PIP coverage at issue. In addition, the panel noted that *Titan* did not involve a claim for benefits by an innocent third party. In this regard, the panel explained:

> In *Titan*, our Supreme Court held that an excess insurance carrier may avail itself of the equitable remedy of reformation (of contract) to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even though the fraud was easily ascertainable and the claimant is a third party, so long as the remedies are not prohibited by statute.
>
> [The claimed] entitlement to PIP benefits is statutory, however, not contractual. The insurer in *Titan* did not seek to avoid payment of statutorily mandated no-fault benefits; in fact, that insurer acknowledged its liability for the minimum liability coverage limits. Nor did *Titan* address a claim for PIP benefits from an innocent third party. Thus, the holding of *Titan*, that an insurance carrier may seek reformation to avoid liability for *contractual* amounts in excess of statutory minimums, does not compel a finding that *Titan* overruled the many binding decisions of this Court applying the "innocent third-party rule" in the context of PIP benefits and an injured third party who is statutorily entitled to such benefits. [*State Farm*, unpub op at 9 (citations omitted).]

Because of the key differences between the issue in *Titan* and the issue involved in *State Farm*, the panel

held that *Titan* did not abrogate or overrule the innocent-third-party rule. *Id.* at 9-10.

### V. THE INNOCENT-THIRD-PARTY RULE SURVIVES *TITAN*

I would hold that the panel in *State Farm* reached the correct result by concluding that the innocent-third-party rule survives *Titan* in the context of statutorily mandated no-fault benefits, and I would therefore hold that the rule has continuing validity and applies in this case. As the panel did in *State Farm*, I note that the coverage at issue in this case differs from that which was at issue in *Titan*. In *Titan*, contractual liability coverage, i.e., nonstatutory, optional liability coverage, was at issue. In fact, statutory coverage was expressly not at issue in *Titan*, as the insurer conceded liability for the statutory minimum coverage amounts under the financial responsibility act, despite alleging that the policy was void *ab initio* because of the insured's fraud. *Titan*, 491 Mich at 552 n 2. In other words, *Titan* involved a case in which the insurer sought to rescind the policy, but acknowledged it was nevertheless responsible for statutory benefits.

In contrast to *Titan*, the PIP benefits at issue in this case are mandated by statute. See, e.g., MCL 500.3101(1) (mandating that the owner or registrant of a motor vehicle required to be registered in this state "maintain security for payment of benefits under personal protection insurance," among other types of insurance); MCL 500.3105 (*requiring an insurer to pay PIP benefits*, subject to the provisions of the no-fault act, and providing *no other exceptions to or limitations on that requirement*); *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012); *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993) ("PIP benefits are mandated by statute under

the no-fault act."). See also *Husted v Auto-Owners Ins
Co*, 459 Mich 500, 513; 591 NW2d 642 (1999) (explain-
ing that the compulsory nature of statutory PIP ben-
efits was meant to guarantee PIP coverage to accident
victims in exchange for limitations on the injured
person's ability to file a tort claim); *Shavers v Attorney
General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978)
(explaining that the no-fault act "was offered as an
innovative social and legal response to the long pay-
ment delays" that existed in Michigan and was meant
to assure "adequate, and prompt reparation for certain
economic losses" through a system of compulsory in-
surance). As *Titan* itself states, "when a provision in an
insurance policy is mandated by statute, the rights and
limitations of the coverage are governed by that stat-
ute." *Titan*, 491 Mich at 554. The plain language of the
no-fault act provides no exceptions to, or limitations
on, its mandate that an insurance carrier cover certain
statutorily identified no-fault PIP benefits. Cf., *id*. ("On
the other hand, when a provision in an insurance
policy is not mandated by statute, the rights and
limitations of the coverage are entirely contractual and
construed without reference to the statute.").

Like the panel in *State Farm*, I conclude that the
difference between the benefits at issue in this case
and the contractual benefits at issue in *Titan* is signifi-
cant. Simply put, *Titan* did not address benefits that
were required by statute; the insurer in that case
expressly acknowledged liability for statutory residual
liability amounts. To conclude that our Supreme
Court's ruling as to purely contractual, excess liability
benefits should apply and overrule approximately 30
years of this Court's precedent with regard to statutory
PIP benefits is a leap I am not prepared to make. That
is, I am disinclined to extend *Titan* and its reasoning to
the innocent-third-party rule as that rule applies to

statutorily mandated PIP benefits. I see no support for doing so in the plain language of the no-fault act. Similarly, I conclude that the innocent-third-party rule is not inconsistent with the Supreme Court's decision in *Titan*. Accordingly, I would find that we are bound to follow this Court's precedent applying the innocent-third-party rule to PIP benefits. See MCR 7.215(J)(1); *Charles A Murray Trust v Futrell*, 303 Mich App 28, 49; 840 NW2d 775 (2013) (noting that this Court is bound to follow a prior published Court of Appeals decision issued on or after November 1, 1990, that has not been reversed or modified by our Supreme Court or a special panel of this Court).

Nonetheless, this conclusion warrants the discussion of two matters. First, the justifications posed for the innocent-third-party rule have been inconsistent over time, and in some cases those justifications were premised on incorrect legal principles.[24] Yet, the innocent-third-party rule has been consistently applied by this Court for over 30 years, and there is an absence of published authority criticizing the rule. Thus, the rule remains good law, and this Court is bound to follow it. MCR 7.215(J)(1). And although not serving as a basis for my decision, I would note that the innocent-third-party rule serves the purposes of the no-fault act. One of the chief purposes of the no-fault act, as has been consistently identified by our appellate Courts, is to ensure prompt and adequate payment for

---

[24] For instance, *Wilson*, 231 Mich App at 331, justified the innocent-third-party rule in a case involving PIP benefits by citing MCL 257.520(f) of the financial responsibility act. MCL 257.520(f) does not apply to PIP benefits under the no-fault act. See *Titan*, 491 Mich at 559-560. However, while MCL 257.520(f) does not apply, when the mandatory nature of PIP benefits is considered, it is not that far of a stretch to see the rationale in analogizing mandatory PIP benefits to mandatory minimum levels of liability coverage.

the types of injuries and losses encompassed under the category of PIP benefits. See, e.g., *Shavers*, 402 Mich at 578-579. Allowing retroactive rescission of a policy in a manner that removes coverage from an innocent individual who would ordinarily be covered under the policy thwarts the mandatory nature of these benefits and the purposes of the no-fault act.

Second, it could be argued that portions of the *Titan* opinion appear to undermine the innocent-third-party rule: notably, the portions of the opinion concluding that the remedy of rescission can only be limited by statute could be said to call the innocent-third-party rule into question. However, as noted earlier in this opinion, the instant case involves an entirely different type of benefits than was at issue in *Titan*. That is, the instant matter involves mandatory PIP benefits, while *Titan* involved voluntary liability coverage above the statutorily required minimum. And significantly, *Titan* expressly did not address mandatory benefits, because the insurer in that case acknowledged liability for certain statutory amounts. Further, and contrary to the majority opinion's suggestions, *Titan* contained no discussion about the innocent-third-party rule and instead addressed a rule arising from this Court's jurisprudence—*Kurylowicz*—that was directly contrary to a published Supreme Court decision regarding the easily-ascertainable-fraud rule. Given these significant differences between this case and *Titan*, I am not inclined to stretch *Titan*'s holding to fit a scenario that was simply not addressed or contemplated by the Court in *Titan*. Accordingly, as did the panel in *State Farm*, unpub op at 9-10, I conclude that *Titan* is inapplicable to the innocent- third-party rule in the context of statutorily required no-fault PIP benefits.

In declining to conclude that *Titan* affects the validity of the innocent-third-party rule in the context of this case, I also note that some of the concerns that were present in *Titan* are not present in the instant case. In *Titan*, 491 Mich at 569, the Court expressed concern that the easily-ascertainable-fraud rule "reduces disincentives for insurance fraud, and transfers legal responsibility from parties that have acted fraudulently to parties that have not." The Court reasoned that the insured, not the insurer, should bear the burden of his or her fraud by being on the hook financially for his or her third-party tort liability above the statutorily required minimum. *Id*. But first-party PIP benefits do not "indemnify an insured despite fraud in obtaining the insurance policy." See *id*. The no-fault system was created to *eliminate* the at-fault driver's legal responsibility for medical expenses and certain wage loss and loss of service expenses, and in doing so, it also took away the injured third party's right to sue for such expenses. Instead, the no-fault system baked into all insurance contracts mandatory coverage for these expenses. Forcing an innocent third party to seek recovery for his or her PIP benefits from the assigned claims facility does nothing to "transfer responsibility" away from those who have acted fraudulently. Moreover, as our Supreme Court has recognized, "an insured often has no control over the conduct of others," and it would be untenable to require an insured to undertake to prevent others from engaging in fraud. *Morgan*, 411 Mich at 277. If we were to accept the invitation to extend the rule from *Titan* addressing voluntary third-party liability excess contractual coverage and conclude that the innocent-third-party rule has been eliminated with respect to first-party statutory PIP benefits, we would essentially force passengers (who do not have a policy of their

own), including children, to either investigate whether the car owner's insurance policy was obtained by fraud before getting into the car or risk being thrown into a firestorm investigation after an accident to obtain that same information in time to make a claim to the right entity. And how would an innocent third party even go about investigating whether the policy procurer obtained the policy through fraud? That person would already have much on his or her mind following an accident, not the least of which is attempting to recover from his or her injuries. Put simply, *Titan* affects an insured's right to receive the protection of voluntary, excess liability coverage with respect to third-party tort claims. Its ruling and rationale do not translate to first-party PIP benefits; to do so would wreak havoc on the no-fault system and would surely lead to every injured person filing a claim with the assigned claims plan, "just in case," in addition to filing a claim with the insurance company whose policy was in effect and covered him or her at the time of the accident. I decline to extend the rationale in *Titan* to the uniquely different setting of statutorily required benefits and by doing so turn the no-fault system, as we have known it over the past 30 years, entirely on its head.

In addition, I note that in *Titan*, 491 Mich at 557, the Court rejected the easily-ascertainable-fraud rule in part because the various doctrines of fraud in Michigan "do not require the party asserting fraud to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud." In short, the easily-ascertainable-fraud rule had no place in the common law of fraud, and thus it could not bar rescission of an insurance policy. This type of problem is not present in the instant case, as the innocent-third-party rule does

not impute any additional requirements on an insurer who pleads fraud in the procurement of a policy.

Moreover, turning to the remedy of rescission, it has generally been viewed as an equitable remedy. *Madugula v Taub*, 496 Mich 685, 712; 853 NW2d 75 (2014). It is not found in the plain language of the no-fault act, yet the Supreme Court deemed it appropriate to apply in the context of voluntary insurance coverage, which is rooted in contract rights. Similarly, the innocent-third-party rule is an equitable remedy that is not found in the plain language of the no-fault act; like rescission, it too should be deemed appropriate to apply in the proper, equitable context. It is well established that the equitable remedy of rescission is not granted as a matter of right and will not be granted when it would accomplish an inequitable result. See, e.g., *Schnitz v Grand River Avenue Dev Co*, 271 Mich 253, 257; 259 NW 900 (1935); *Johnson v QFD, Inc*, 292 Mich App 359, 375; 807 NW2d 719 (2011); *McMullen v Joldersma*, 174 Mich App 207, 219; 435 NW2d 428 (1988). Thus, the remedy of rescission carries with it the idea that the result achieved is to be an equitable one. In other words, there is room within the concept of rescission for balancing the equities, which ostensibly extends to considering the fact that an innocent third party is involved and mandatory PIP benefits are at issue. I am not convinced that it is equitable in this case to allow an insurer to avoid paying statutorily mandated PIP benefits when the innocent, injured third party, absent another's fraud, would have been entitled to coverage under the policy. See *Morgan*, 411 Mich at 276-277. This is especially true when the no-fault act itself discusses mandatory benefits with no mention of limitations on or exceptions to that mandatory coverage.

Furthermore, I am not convinced that it is equitable to require the innocent third party otherwise covered by a policy to seek PIP benefits through the assigned claims plan in the event the insurance carrier claims fraud by the procurer and seeks rescission, as Sentinel contends should occur in this case. As Sentinel impliedly concedes in its briefing, the payment of benefits through the assigned claims plan might be unavailable for certain innocent third parties. And I note that statutory deadlines for giving notice of claimed PIP benefits could prevent an innocent third party, through no fault of his or her own, from receiving mandatory PIP benefits. Notably, a person claiming benefits through the assigned claims plan "shall notify" the Michigan Automobile Insurance Placement Facility (MAIPF) of his or her claim within one year. See MCL 500.3174;[25] MCL 500.3145(1).[26] See also *Bronson Meth-*

---

[25] MCL 500.3174, which refers to timing deadlines for PIP benefits (MCL 500.3145(1)), provides:

> A person claiming through the assigned claims plan shall notify the Michigan automobile insurance placement facility of his or her claim within the time that would have been allowed for filing an action for personal protection insurance benefits if identifiable coverage applicable to the claim had been in effect. The Michigan automobile insurance placement facility shall promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned. An action by the claimant shall not be commenced more than 30 days after receipt of notice of the assignment or the last date on which the action could have been commenced against an insurer of identifiable coverage applicable to the claim, whichever is later.

[26] MCL 500.3145(1) sets forth certain deadlines for commencing an action for the recovery of PIP benefits as follows:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the

*odist Hosp v Allstate Ins Co*, 286 Mich App 219, 225-226; 779 NW2d 304 (2009) (examining MCL 500.3145(1) and MCL 500.3174). I pose the following question: what happens when an innocent third party tries to obtain PIP benefits through the insurer listed on the policy, only to have that insurer subsequently rescind the policy because of fraud in which the innocent third party did not participate, and the innocent third party then misses the one-year deadline for notifying the MAIPF? At least one panel of this Court has held that unless notice is given to the MAIPF within one year of the accident, the claim is barred, even when the injured person first sought benefits from the insurer he or she thought was the correct insurer. See *Visner v Harris*, unpublished opinion per curiam of the Court of Appeals, issued December 6, 2012 (Docket Nos. 307506 and 307507), pp 3-4.[27] This bolsters the position that permitting the remedy of rescission of an insurance policy under which PIP benefits payable to innocent third parties are sought has the potential to work an inequitable result. More-

---

accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

[27] Although unpublished decisions such as *Visner* are not binding precedent, they may be viewed as instructive or persuasive authority. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

over, allowing insurance companies to rescind their
contracts with respect to PIP benefits owed to innocent
third parties could encourage gamesmanship and de-
lay tactics on the part of an insurer; insurance compa-
nies are assigned claims by the MAIPF, and waiting to
rescind an insurance policy until after that claim
deadline passes means fewer claims will be assigned
by the MAIPF. This also runs afoul of the no-fault act's
purpose of ensuring prompt and adequate payment for
the types of injuries and losses encompassed under the
category of PIP benefits. *Shavers*, 402 Mich at 578-579.
Put simply, I do not agree that the equitable remedy of
rescission trumps the equitable remedy of the
innocent-third-party rule such that it is appropriate to
apply rescission to first-party statutorily mandated
PIP benefits, and I decline to extend *Titan* in that
fashion.

The majority opinion indicates that it "decline[s] the
invitation to legislate into existence an innocent-third-
party rule that, thus far, the Legislature has chosen
not to adopt." I first note that the equitable remedy of
the innocent-third-party rule has barred claims for the
equitable remedy of rescission with respect to PIP
benefits and innocent third parties for more than 30
years, yet the Legislature has felt no need to tweak the
no-fault act to set this Court straight. I also note that
the Legislature has never adopted the equitable rem-
edy of rescission when it comes to the no-fault act and
statutorily entitled PIP benefits. Rather, it expressly
states that no-fault PIP benefits are *mandatory*. That
should rule the day when it comes to statutorily
mandated PIP benefits.

VI. CONCLUSION

The differences that exist between this case and
*Titan* are significant. For the reasons stated in this

opinion, I would conclude that *Titan* does not abrogate the innocent-third-party rule with respect to statutory, first-party PIP benefits, and I would not cast aside 30 years of this Court's precedent on the matter.

Accordingly, I would affirm the trial court's ruling to the extent it held that the innocent-third-party rule applied. However, I would hold that the trial court erred by concluding that plaintiff, as an innocent third party, could only recover PIP benefits up to the amount mandated by MCL 257.520. As discussed, that limitation is not applicable to this case.